IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| DANIEL L. WEAVER, | ) ) ) | |
| Petitioner, | ) ) | Case No. CV 05-252-S-MHW |
| v. | ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) ) ) | |
| Respondent. | ) ) ) | |

## Introduction

Currently before the Court for its consideration is the Daniel L. Weaver's ("Petitioner") request for judicial review (Docket No. 2) of the Respondent's denial of social security disability benefits, filed June 24, 2005. Petitioner brought this action pursuant to the Social Security Act (Act), as amended, 42 U.S.C. § 405(g). The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, the administrative record ("AR") and for the reasons that follow, will remand the matter to the Commissioner of the Social Security Administration.

## I.
## Background

### A.   Administrative Proceedings

Petitioner filed an application for Disability Insurance Benefits and Supplemental Social Security Income on August 22, 2002. (AR 59.) He alleged disability since July 5, 2002. (AR 59.) The applications were initially denied on November 1, 2002 (AR 36) and upon reconsideration on April 24, 2003. (AR 28.) After a timely request for a hearing was filed on

**Memorandum Decision and Order - Page 1**

May 29, 2003 (AR 239), Petitioner, represented by a non-attorney representative Jacob Bernhart (AR 14), appeared and testified before Administrative Law Judge (ALJ) Robin L. Henrie on June 8, 2004. (AR 239.)  Vocational expert Polly A. Peterson, Ph.D., also appeared and testified. (AR 14.)

ALJ Henrie considered the testimony and all other evidence of record and on July 26, 2004, issued a decision finding Petitioner not disabled within the meaning of the Act, and was therefore not entitled to disability insurance benefits or supplemental social security income. (AR 22.)  This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on April 26, 2005. (AR 3.)  Petitioner has exhausted all administrative remedies and is therefore seeking judicial review pursuant to Section 405(g) of the Social Security Act.

**B.     Statement of Facts**

At the time of the hearing before the ALJ, Petitioner was fifty-seven (57) years old. (AR 14,)  Petitioner had thirteen (13) years of education, and his prior work experience includes house painter, seafood processor, carpenter, computer assembler, casino cashier, census enumerator, surveillance technician, floor installer, and manager. (AR 14.)  Petitioner alleged disability since July 5, 2002 due to bulging discs in back, pinched nerves in his hip and leg, pain and numbness in his right leg and foot, and inability to stand or walk for any length of time. (AR 95.)

Since November 2001, Petitioner has been treated and/or evaluated by various medical professionals, including Dr. Branahl, for hypertension and diarrhea.  (AR 145.)  In May 2002, Petitioner was examined by Dr. Branahl after several weeks of experiencing right knee pain

when climbing stair and/or ladders or riding a bike. (AR 131.)  Petitioner was diagnosed with chonodromalacia patellae, right; hypokalemia secondary to dyazide; and inflammatory bowel disease.  (AR 128.)  Petitioner was seen at an Urgent Care facility on June 24, 2002, for pain in his right knee and back, difficulty climbing stairs, foot numbness and foot drop with numbness. (AR 127.)  Throughout the summer of 2002, Petitioner consulted with a physical therapist, a prosthetics clinic for a foot brace, nurses, a neurosurgeon and Dr. Branahl regarding severe pain in his knee and back when walking or standing due to a bulging spinal disc.  (AR 113-126.) Petitioner reported unbearable pain during this time (AR 121) that became manageable with Gabapentin. (AR 113.)  An MRI showed focal right paramedial disc extrusion at L4-5 constricting  central canal, lateral recesses and neuroforamina. (AR 151.)

After a neurosurgery consultation with Dr. Gauger (AR 111), Petitioner underwent a lumbar laminectomy in both April and November of 2003. (AR 195.)  Also during 2003, Petitioner reported intermittent diarrhea and cramps, primarily during the morning. (AR 199, 208, 212, 214, 221.)  Petitioner's symptoms met the Rome II criteria for irritable bowel syndrome.  His colonoscopy showed minimal inflammatory changes and otherwise was within the normal limits. (AR 199.)

On January 26, 2004, Petitioner was examined by Dr. Bungard.  Petitioner was found to have no relief of symptoms following his surgeries.  He continued to have constant low back pain with radiation down the right leg to his knee with a pain level of 4-8.  There was a burning sensation and numbness in his right foot.  Petitioner was taking Oxycodone and Gabapentin for his back pain.  It was noted that his daily activities were "virtually nil" with the exception of some housework and cooking.  (AR 195.)  The diagnosis was degenerative arthritis of the lumbar

**Memorandum Decision and Order - Page 3**

spine with right radiculopathy and mild left radiculopathy. (AR 194.) With regards to Petitioner's irritable bowel syndrome, the physician noted the continuance of abdominal cramps and diarrhea. (AR 195.) Dr. Bungard opined that Petitioner could not engage in any physical labor and in regard to sedentary employment, he was unable to sit down for any significant length of time and had difficulty standing for any significant length of time and would be "unable to engage in a sedentary occupation." (AR 194.) On March 22, 2004, Dr. Gauger examined Petitioner and noted that he could walk on his heels and toes, he used a foot brace to keep his foot from "flopping," sensation was decreased in medial right foot, reflexes were absent in right knee and ankles, and in straight leg testing, there was no pain at 70 degrees on either side. (AR 188.)

On April 22, 2004, Dr. Gauger completed a Residual Functional Capacity Questionnaire. According to Dr. Gauger's assessment of Petitioner's back condition, he stated that Petitioner could only walk a half block without rest or severe pain; he could only sit for 30 minutes at a time and less than 2 hours total in an 8 hour workday; he could stand only for 30 minutes at a time and less than 2 hours total in an 8 hour workday. He also opined that Petitioner would need a job which permits shifting positions at will from sitting, standing or walking and that he would need to take unscheduled breaks or include periods of walking around in an 8 hour workday. Dr. Gauger also indicated that Petitioner could only occasionally lift and carry less than 10 lbs. and could not stoop or crouch for any amount of time. He also noted that Petitioner did have significant limitation in doing repetitive reaching, handling or fingering but then noted that Petitioner could use his fingers, arms and hands for manipulation, reaching, and grasping/turning 100% of the time. Dr. Gauger estimated Petitioner would be absent from work more than four

**Memorandum Decision and Order - Page 4**

times a month as a result of his impairments. He also opined that Petitioner had these same limitations and restrictions noted in his Questionnaire since July 2002. (AR 233-234.)

On May 13, 2004, Dr. Branahl completed a Residual Functional Capacity Questionnaire. According to his assessment of Petitioner's irritable bowel syndrome, he stated that Petitioner's symptoms would "frequently" interfere with his attention and concentration and that he suffers from dizziness and drowsiness as a side effect of his medication. Dr. Branahl noted that Petitioner would need to take unscheduled breaks four to six times a day for 15-30 minutes each. He estimated that Petitioner would be absent from work more than four times a month due to his impairment. Similar to Dr. Gauger, he opined that Petitioner had these limitation and restrictions noted in his Questionnaire since July 2002. (AR 230-231.)

## II.
## Findings of the Administrative Law Judge

In the decision issued following the hearing (AR 14-22), the ALJ made specific findings as follows:

1. The claimant meets the nondisability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease of the lumbar spine, chondromalacia patellae - right knee and irritable bowel syndrome are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity for a limited range of sedentary work as set forth in detail in the body of this decision.

7. The claimant's past relevant work as a surveillance technician did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work as a surveillance technician.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.

1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); and *Flaten v. Sec'y of Health and Human Services*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).

**Memorandum Decision and Order - Page 7**

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits. 20 C.F.R. §§ 404.1520, 416.920 (1996); *Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If the claimant is engaged in such activity, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). The ALJ determined that the Petitioner was not involved in any substantial gainful activity. (AR 21.)

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(d)(1); and 416.929(d)(1). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied. The ALJ here found that Petitioner's impairments or combination of impairments of degenerative disc disease of the lumbar spine, chondromalacia patellae - right knee and irritable bowel syndrome did significantly limit his ability to engage in basic work activities and therefore did constitute a severe impairment. (AR 21.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4. 20 C.F.R. §§ 404.1520(d); 416.920(e). Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment. If a claimant can show he or

she is limited by such an impairment, disability is presumed.  The ALJ here determined that Petitioner did not possess the findings upon examination which are required in order for disability to be predicated on medical considerations alone, and that Petitioner's impairments did not meet or medically equal the severity of any of the listings in Appendix 1, Subpart P, Regulation No. 4.  (AR 22.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).  In the instant case, the ALJ determined from the evidence that the Petitioner did retain the residual functional capacity for a limited range of sedentary work.  (AR 22.)  The ALJ noted that Petitioner was limited to sedentary work that did not require:  lifting more than 10 pounds at a time; lifting or carrying lighter articles weighing more than 3-4 pounds, on an occasional basis; standing or walking more than 30-45 minutes at a time and no more than 5-6 hours in an 8-hour workday; sitting, standing or walking more than 15-30 minutes at a time; stooping, bending or squatting; working on the floor; climbing more than a few stairs at a time; and working in an area without a restroom nearby for quick access.  Based on the testimony of the vocational expert, the ALJ found Petitioner could return to his past relevant work as a nightclub surveillance technician.  (AR 19-20.)  On the basis of this review, the ALJ determined that Petitioner was not disabled within the meaning of the Act.

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. 20 C.F.R. §§ 404.1520(f), 416.920(f). As Petitioner was determined to not be disabled at the fourth step, the ALJ did not need to proceed to this final step of the evaluation.

## IV.
## Issues Raised

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992). Petitioner contends that the ALJ erred in the following respects:

1) The ALJ erred in failing to provide the specific reasons for the weight assigned to Petitioner's treating physicians' opinions.

2) The ALJ erred in failing to provide specific clear and convincing evidence for rejecting Petitioner's testimony.

The Court will take each argument in order.

## V.
## Discussion

**A.  Failure to Provide Specific Reasons for Weight Assigned to Petitioner's Treating Physicians' Opinions**

Petitioner urges that the ALJ failed to provide a "clear and convincing" reasons why he did not afford controlling weight to the opinions of his treating physicians. Petitioner argues that the ALJ rejected the opinions of Dr. Gauger and Dr. Branahl as they related to his residual functional capacity, ability to work or disability without any specific reference to the record. He asserts that the ALJ did not submit "clear and convincing" reasons for rejecting these treating

physicians' opinions as required under the regulations and that the ALJ did not support his rejection with a single citation to the record. Petitioner maintains that Dr. Gauger and Dr. Branahl's opinions are not contradicted by any other sources. Petitioner further argues that the ALJ completely failed to discuss the opinion of Dr. Brungard and Dr. Elzinga who stated in their assessment that Petitioner was unable to work.[1]

There are three types of physicians distinguished in the regulations implementing Title II and Title XVI of the Act: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians.) *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). In general, a treating physician's opinion is given more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Holohan*, 246 F.3d at 1202. A physician's opinion should be based on clinical or otherwise reliable evidence and not solely upon the patient's subjective complaints. *Brawner v. Sec'y of Health and Human Services*, 839 F.3d 432, 434 (9th Cir. 1988). For instance, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and found to be unsupported by clinical findings. *Matney*, 981 F.2d at 1019. Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ may reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons. *Id.* To reject the opinion of a treating physician which conflicts with

---

[1] The Court notes that the ALJ does in fact discuss the assessment conducted by Dr. Brungard and Dr. Elzinga on January 26, 2004, but mistakenly refers to Dr. Branahl as being the examining physician on that date.

**Memorandum Decision and Order - Page 11**

an examining physician's opinion, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Id*. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.

In his decision, the ALJ stated that he considered the opinions of the treating physicians, Dr. Gauger and Dr. Branahl, but gave them diminished weight as they were "inconsistent with and not supported by the objective medical evidence" and that the "multiple inconsistencies"[2] in Dr. Gauger's assessment rendered it less persuasive. (AR 19.)

With regard to the "multiple inconsistencies" noted by the ALJ in Dr. Gauger's assessment, these are not the "discrepancies" envisioned by the case cited by Respondent in support of its argument. In *Bayliss v. Barnhart*, the Ninth Circuit detected a discrepancy between a doctor's statement that a patient could only stand or walk for 15 minutes at a time and the doctor's notes and other observations. 427 F.3d 1211, 1216 (9th Cir. 2005). The court stated that this type of "discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding [Petitioner]'s limited ability to stand or walk." *Id*. The inconsistencies noted by the ALJ in his decision were found in Dr. Gauger's responses to the Residual Functional Capacity ("RFC") Questionnaire, a document provided by the Social Security Administration, not in the doctor's own medical notes and observations made for purposes of treating Petitioner. The inconsistencies noted by the ALJ were not the type of discrepancies that constituted a "clear and convincing reason" for rejecting the doctor's opinion in *Bayliss*. Additionally, there were

---

[2] The Court does not agree that all of the "inconsistencies" noted by the ALJ are truly inconsistent. For example, the ALJ deemed it inconsistent that Dr. Gauger stated Petitioner could sit and stand for only 30 minutes at a time and could sit and stand for a total of less than 2 hours in an 8 hour workday. The Court finds it entirely consistent that Petitioner could sit and stand at the most for 30 minutes at a time but only for a total of less than 2 hours in an 8 hour workday.

**Memorandum Decision and Order - Page 12**

still two other physicians' who opined that Petitioner is limited in his ability to sit, stand and work. (AR 194-195, 230-232.) With the special weight that is to be given to treating physicians' opinions, and then, in lesser degree, to examining physicians' opinions, the Court concludes that more than a few inconsistencies in one treating physician's RFC Questionnaire are needed to supplant two treating and one examining physicians' opinions that Petitioner is unable to work.

More importantly, in his decision, the ALJ stated only that the opinions were not supported by objective medical evidence, but did not discuss in any detail how he came to this conclusion. The Ninth Circuit has held that "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Similar to the case at hand, in *Embrey* the ALJ did conduct a review of the medical evidence in his decision but then concluded that "the opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings." *Id*. The Ninth Circuit declared this type of conclusion did not reach "the level of specificity our prior cases have required . . .The ALJ merely states that the objective factors point towards an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects. This approach is inadequate." *Id*. The ALJ here did recite the medical evidence and facts of the case but did not explain how they supported his conclusion that Petitioner was not under a "disability." It is not acceptable for the ALJ to merely conclude that the objective medical evidence does not support the physicians' opinions but not explain how and why he came to that conclusion. Both Dr. Gauger and Dr. Branahl completed RFC Questionnaires in 2004 and stated that Petitioner was unable to work

**Memorandum Decision and Order - Page 13**

since July 2002 and Dr. Bungard examined Petitioner and found he would "be unable to engage in any physical labor...[and] unable to engage in a sedentary occupation."  (AR 194-195, 230-235.)  Three physicians, who either treated or examined Petitioner, found him to be unable to work.  The ALJ held to the contrary.  (AR 21-22.)  "[W]here the medical opinions of physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings."  *Embrey*, 849 F.2d at 422.  The ALJ failed to provide any detailed reasoning on how the medical evidence did not support these physicians' opinions.  An ALJ must render specific reasoning when rejecting three treating and/or examining physicians' opinions, otherwise the rejection or diminished weight given to the opinions will be improper.  *See* Soc. Sec. Rul. 96-2p (stating that "specific reasons for the weight given to the treating source's medical opinion" must be included in the ALJ's decision.)  Indeed, the Regulations themselves require the agency to give "good reasons" for not giving weight to a treating physician's opinion in the context of a disability determination.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The Sixth Circuit has even essentially held that an ALJ's failure to give "good reasons" for not giving weight to a treating physician's opinion is grounds for remand even if substantial evidence otherwise supports the ALJ's decision because agencies are bound to follow their own regulations and these regulations were intended to protect the claimants.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

      The ALJ here failed to provide substantial evidence for his decision to give the treating physicians' opinions diminished weight.  His insufficient explanation that the opinions were not supported by the "objective medical evidence" and the "inconsistencies" he noted in Dr. Gauger's RFC Questionnaire do not constitute "clear and convincing" nor "specific and legitimate" reasons for rejecting the physicians' opinions.  Taking into consideration both the

**Memorandum Decision and Order - Page 14**

failure to provide such reasons, along with the amount of weight that is presumptively accorded to treating physicians, the Court finds that ALJ erred in this regard.

B.   **Failure to Provide Specific, Clear and Convincing Evidence for Rejecting Petitioner's Testimony**

Petitioner argues that the ALJ failed to provide an adequate justification for rejecting Petitioner's testimony and neglected to state exactly how Petitioner's statements that he does some cooking, housework, shopping, lawn and garden work, and made trips to California for his back surgeries reduced his credibility. Petitioner also asserts that his testimony was consistent with the opinions of his physicians that he is disabled and unable to work. Petitioner contends that the ALJ has failed to provide clear and convincing reasons for rejecting his testimony and that the reasons the ALJ did provide are not supported by any citations to specific evidence.

Courts have consistently held that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *See Meanel,* 172 F.3d at 1113; and *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996). A claimant may not rely upon mere allegations of pain to meet his burden of proof, but must substantiate such allegations with objective medical findings which could reasonably be expected to produce the alleged pain or other symptoms. *See* 42 U.S.C. §§ 423(d)(5)(A) and 1382c(3)(H). The effect of pain can be assessed within an individual's functional capacity and then an ALJ may evaluate the credibility of a claimant's statements about the pain. *Id.* Although a claimant may produce objective medical evidence of an underlying impairment, an ALJ may nonetheless reject the claimant's testimony about the severity of the pain if he can state specific, clear, and convincing reasons for doing so. *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996). An ALJ is not required to believe every allegation of disabling pain because it would be contrary to 42 U.S.C.

**Memorandum Decision and Order - Page 15**

§ 423(d)(5)(A), and while many medical conditions produce pain it is not always severe enough to preclude gainful employment. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Additionally, the Court must affirm the ALJ's decision where the evidence reasonably supports either confirming or reversing it. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2003).

The ALJ declared that he did not find Petitioner fully credible because, although he probably did suffer some pain and discomfort, his testimony indicated that his medication is relatively effective in managing the pain and his irritable bowel syndrome manifests itself mainly during the morning hours. The ALJ also noted that Petitioner is able to do some cooking, housework, shopping, lawn and garden work, and made several trips to California for his surgeries. Additionally, the ALJ pointed out that during the hearing Petitioner did not present or testify as someone who was so disabled that he could not do the easy job of surveillance systems monitor and stated Petitioner has been somewhat active since he has not been working and has rather good pain control on Gabapentin with no significant side effects. (AR 19).

When an ALJ makes an adverse credibility finding, sufficient reasons must be included in the record to demonstrate that the ALJ did not arbitrarily discredit Petitioner's testimony. As the Ninth Circuit stated, "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Also, the ALJ may consider: an individual's daily activities; location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p. In his decision, the ALJ discussed the Petitioner's daily activities as well as

**Memorandum Decision and Order - Page 16**

trips he had taken, noted that his medication seems to control his pain rather well with no significant side effects, and observed that Petitioner did not testify or present as someone who was so disabled that he could not do his past job of surveillance systems monitor. (AR 18-19.)

As stated above, it is the ALJ's job to determine credibility. *See Meanel*, 172 F.3d at 1113. If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Additionally, if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound. There is substantial evidence in the record to support the ALJ's finding that the Petitioner was not fully credible as the ALJ took into consideration Petitioner's daily activities, the effectiveness of his pain medication, as well as the ALJ's own observation that Petitioner did not appear so disabled as to preclude all work activity. (AR 18-19.) Furthermore, even if the evidence could admit to an interpretation more favorable to Petitioner, so long as the ALJ's interpretation was rational, the Court must uphold that decision where the evidence is susceptible to more than one rational interpretation. *See Burch*, 400 F.3d at 680-81. Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Petitioner is not fully credible.

## VI.
## Conclusion

Based on its review of the entire record, the Court finds it necessary for this matter to be remanded to the Commissioner of the Social Security Administration. In accordance with this decision, the Commissioner must reevaluate and weigh the medical opinions of both treating physicians and the examining physician, applying the legal standards set forth herein.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Petition for Review (Docket No. 2) is GRANTED.

2) This action shall be REMANDED to the Commissioner for review in accordance with this order.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 25, 2006

Honorable Mikel H. Williams
United States Magistrate Judge